UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRELL AINSWORTH,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>W.L. MONTGOMERY, Warden,<br><br>　　　　Respondent. | No. CV 14-7503 AGR<br><br>OPINION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

　　　　Petitioner filed a First Amended Petition for Writ of Habeas Corpus that raised four grounds. For the reasons set forth below, Petitioner's request that the Court dismiss Grounds Three and Four is granted based on the relief he received from the state court. The remaining Grounds One and Two are denied on the merits.

# I.

# SUMMARY OF PROCEEDINGS

On February 3, 2012, a Los Angeles County Superior Court jury found Petitioner guilty of first degree murder and found true a firearm allegation. (Lodged Document ("LD") 1 at 271.) On April 26, 2012, the trial court sentenced Petitioner to 75 years to life with credit for 654 days in custody. (*Id.* at 308-09.)

On September 13, 2013, the California Court of Appeal affirmed the judgment of conviction but remanded for resentencing in light of *Miller v. Alabama* and for an award of 798 days of custody credit. (LD 3.) On November 22, 2013, the California Supreme Court denied the petition for review. (LD 5.)

On December 2, 2013, the trial court resentenced Petitioner to 75 years to life after considering the factors in *Miller v. Alabama* and awarded Petitioner 798 days of presentence custody credits. (LD 6.) The minute order indicated Petitioner and his counsel were not present. The order indicated a copy of the amended abstract was forwarded to the CDCR and the case file was forwarded to the state prison desk. There was no indication the court sent Petitioner or his counsel a copy of the minute order. (*Id.*)

On September 22, 2014, Petitioner constructively filed the initial petition for writ of habeas corpus. (Dkt. No. 1.) That petition raised four grounds: (1) instructional error based on the trial court's refusal to instruct the jury on voluntary manslaughter; (2) evidentiary error in admitting evidence of a shotgun; (3) sentencing error in failing to consider the factors in *Miller v. Alabama*, 132 S. Ct. 2455 (2012); and (4) sentencing error in failing to award custody credits for the actual time spent in custody.

Respondent filed a motion to dismiss the initial petition because Grounds Three and Four were either unexhausted or moot.

This court granted Respondent's motion to dismiss Grounds Three and Four as moot after Petitioner was resentenced by the trial court on December 2, 2013. This court found no evidence, however, that Petitioner had notice of the resentencing until he received Respondent's motion to dismiss. Petitioner's opposition to the motion to dismiss

raised two new grounds that challenged his resentencing: (1) violation of his constitutional right to be present at resentencing; and (2) violation of the Eighth Amendment under *Miller v. Alabama*, 132 S. Ct. 2455 (2012). This court construed Petitioner's opposition as a motion for leave to file a First Amended Petition and granted the motion. This court found good cause for Petitioner's failure to exhaust his two new grounds earlier because he was not aware of his December 2, 2013 resentencing until he received Respondent's motion to dismiss the petition. The court granted a stay pending exhaustion of the new grounds in state court. (Dkt. No. 28.)

On November 8, 2015, Petitioner constructively filed his First Amended Petition that raised four grounds for relief: (1) instructional error based on the trial court's refusal to instruct the jury on voluntary manslaughter; (2) evidentiary error in admitting evidence of a shotgun; (3) violation of his constitutional right to be present at resentencing; and (4) violation of the Eighth Amendment under *Miller v. Alabama*. (Dkt. No. 29.)

The California Supreme Court denied a state habeas petition as moot on October 26, 2016. (LD 9.)

Petitioner had previously received permission to file a belated notice of appeal from the trial court's resentencing based on a showing of good cause on February 10, 2016. On July 5, 2017, the California Court of Appeal vacated the sentence and remanded the matter to the trial court with directions to hold a noticed sentencing hearing and reconsider Petitioner's sentence in accordance with its opinion. *People v. Ainsworth*, 2017 Cal. App. Unpub. LEXIS 4592 (2017) (Case No. B269870).

On September 7, 2017, Respondent filed an answer. On November 27, 2017, Petitioner filed a reply in which he requested that Grounds Three and Four be dismissed because the issues had already been adjudicated by the California Court of Appeal. (Reply at 2; Reply Mem. at 17.) Petitioner's request is granted. The court addresses the remaining Grounds One and Two below.

## II.

## **STATEMENT OF FACTS**

The California Court of Appeal set forth the following facts on direct appeal. To the extent that an evaluation of Petitioner's individual claims depends on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims.

    I.    The Prosecution Case

    *A.*    *The Murder*

On February 7, 2010, Sherrice May, Robert Stepney, and defendant (known as "South" or "South Side") were at the home of Andrea Hood along with several other people. The group was hanging out, drinking, smoking marijuana, and using Ecstasy pills. The victim, James Withers, approached defendant repeatedly and tried to persuade him to commit a robbery with him, to "get in with [defendant]" and be able to "make money, too." Defendant got angry at Withers for talking openly about robberies in the group setting and for persisting in discussing the subject. While the group was near the apartment building's laundry room, Withers again brought up the subject and defendant pulled out a gun and pointed it at Withers's face, telling Withers to stop talking to him. Defendant said, "If I have to tell you again," implying they were going to fight. Defendant called Withers a derogatory name and said, "I'll kill you." Defendant's voice was not loud during this conversation. Stepney said the gun was a .380 semiautomatic pistol. May recalled seeing defendant with the gun before, as well as with a Mossberg shotgun. Defendant put the gun away and said he did not need a gun to fight, or "handle," Withers.

Defendant and Stepney then took Withers and dropped him off somewhere away from the gathering, expecting not to see him again that night. But shortly thereafter May, Stepney, and defendant drove a friend home then went to a nearby liquor store and Withers was there. Withers got in the back seat of the car with May, Stepney, who was in the front passenger seat, and defendant, who was driving. Withers asked defendant again about committing a robbery, and defendant responded that they would do it right then. As defendant drove he repeatedly told Withers that he had better be ready.

Defendant drove to a residential neighborhood. He said that various houses had too much light around them and kept driving until he found a dark area. Defendant stopped the car, told May to get into the driver's seat, and told Withers to get out of the car. May thought they were going to rob someone. Defendant and Withers exited the car and May saw them standing at the right rear of the car; she adjusted the rearview mirror so she could see them. Seconds later, defendant pulled out his black handgun and pointed it at Withers's face. May saw a flash and heard a gunshot, then saw Withers fall and hit the trunk of the car. Stepney also saw the gunshot in the mirror.

Defendant got back in the car and asked if he had blood on his face. He told May to drive. He directed her where to go, saying "I noodled that n****r." Defendant warned May and Stepney that they "didn't see nothing." He said if what had happened got out he would know it was their fault, and he said if he was caught he would make it seem

that all three of them were involved. He told them he would come get them in the morning to help him clean the car, and he did so. May said there was "blood and brains and a bunch of stuff all over the car."

May and Stepney knew defendant was a member of theh South Side Compton Crips gang and they were afraid of him. After the shooting, defendant kept seeking them out, and they heard he was saying that he was going to kill them next. Both May and Stepney were afraid to testify at trial.

### B. The Investigation

Law enforcement agents searched defendant's residence and found a .45 caliber revolver and a loaded pistol-grip Mossberg shotgun. Defendant's grandmother gave Long Beach Police Detective Daniel Mendoza a live .380 round of ammunition she had found in her bathroom after she heard defendant "racking" a gun in the bathroom. The grandmother knew defendant had a Mossberg shotgun and that he had chased a young man through the apartment courtyard with it.

Defendant attempted to flee from the police when they arrested him in order to question him regarding the Withers murder. He told the police he had been at a party with Withers the night the latter was killed. He said he had a black BB gun he carried for protection, and that he was waving it around at the party. He claimed to have given the BB gun to someone else. Defendant denied having anything to do with Withers's murder. He said Withers had stolen things from the apartment where the party was held. Defendant told the

detective that the police had nothing: no gun, no car, or crime scene.

Police found a spent shell casing near Withers's body. Marks on that shell casing were compared to marks on the live .380 round found in defendant's grandmother's bathroom. Both rounds had been cycled through the same handgun.

II. The Defense Case

Withers's mother, Karen Phillips, testified that Withers called her frequently to check in. On the night he was killed, he called and told her he was with May and would be staying at Andrea's home. He said he would be home the following day, after work.

May called later and asked Phillips if Withers was with her. This worried Phillips because Withers had said he was with May.

(LD 3 at 3-5.)

**III.**

**STANDARD OF REVIEW**

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

"'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see Greene v. Fisher*, 565 U.S. 34, 40 (2011) (examining Supreme Court precedent as of the date of the last state court decision on the merits of the claim). Clearly established federal law includes only the holdings, as opposed to the dicta, of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

A state court's decision is "contrary to" clearly established Federal law if (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "'confronts a set of facts . . . materially indistinguishable'" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (citation omitted). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Andrade*, 538 U.S. at 76; *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005) ("An 'unreasonable application' occurs when a state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case.") (citation and some quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citation omitted).

"Under § 2254(d), a habeas court must determine what arguments or theories supported or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

8

could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this [Supreme] Court." *Richter*, 562 U.S. at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards, this court looks to the last reasoned state court decision. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim without explanation, this court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013); *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011). If the state court declined to decide a federal constitutional claim on the merits, this court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

**IV.**

**DISCUSSION**

**A. GROUND ONE: Instructional Error**

Petitioner argues that the trial court erred by failing to instruct the jury as to the lesser included offense of voluntary manslaughter. Petitioner contends that the evidence supported an argument that he was provoked by the victim's persistence and snapped.

9

The California Court of Appeal's opinion on direct appeal is the last reasoned decision on this ground.

"The only question . . . is 'whether [a jury] instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation omitted); *see Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). In making that determination, "[t]he jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* (citation and quotation marks omitted). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right].'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[W]e 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting from *Dowling v. United States*, 493 U.S. 342, 352 (1990)). When a petitioner claims that an instruction was erroneously omitted, the petitioner bears an especially heavy burden because an omitted or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

Instructional error is subject to harmless error analysis. *See Hedgpeth v. Pulido*, 555 U.S. 57, 60-61 (2008); *Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009).

The "failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998); *see Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (declining to decide whether due process requires instructing on lesser included offense in noncapital case). The state court's decision cannot be contrary to clearly established federal law when there is a lack of holdings on the issue from the United States Supreme Court. *Carey*, 549 U.S. at 77.

In any event, Petitioner has not shown error. The heat of passion defense "focuses upon whether the person of average disposition would be induced to react from passion and not from judgment." *People v. Beltran*, 56 Cal. 4th 935, 939 (2013). The

state court reasonably concluded, as a matter of state law, that even assuming Petitioner's state of mind, "no rational trier of fact could conclude that such behavior was sufficient to arouse heat of passion in the mind of an ordinarily reasonable person." (LD 3 at 7.)

In his reply, Petitioner appears to argue that there was insufficient evidence to support his first degree murder conviction. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979). "'[A] reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously." *McDaniel v. Brown,* 558 U.S. 120, 131 (2010) (citation omitted). This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 318-19 (emphasis in original). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (per curiam). A reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

In applying the *Jackson* standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law at the time that a petitioner committed the crime and was convicted, and look to state law to determine what evidence is necessary to convict on the crime charged. *Id.* at 324 n.16. The "minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam).

The Supreme Court has made clear that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos,* 565 U.S. at 2. "[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 7 (quoting *Jackson*, 443 U.S. at 319 (emphasis in original)). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326).

The California Court of Appeal rejected Petitioner's argument on direct appeal. The court found sufficient evidence that Petitioner drove around for some time until he found a suitably dark location, got out of the car with a gun and, after a brief verbal exchange, pointed a gun at Withers' head and fired. "Shooting someone point blank in the head is, without question, sufficiently lethal that a jury could find there was sufficient evidence of intent to kill." (LD 3 at 9.) The court also found that this evidence readily supported the inference of planning activity sufficient to show premeditation and deliberation. (*Id.* at 8.) Petitioner argues that the jurors must have had "doubt as to the evidence adduced at trial" based on the jury's question, during deliberations, as to whether they are to consider the degree to which the suspect/witnesses were under the influence of drugs and whether that condition can make that person unable to plan or premeditate. (LD 11 at 267.) Petitioner concedes that the jury was instructed on that point. (Reply, Memo. at 11; LD 11 at 268-70.) The jury was also instructed that the prosecution had the burden of proving each element beyond a reasonable doubt. (LD 11 at 247.) The jury subsequently returned a verdict of guilty as to first degree murder.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts. Ground One does not warrant habeas relief.

**B.     GROUND TWO: Evidentiary Error**

Petitioner argues that the trial court erred in admitting evidence of the Mossberg shotgun, which was not the murder weapon. The California Court of Appeal's decision on direct appeal was the last reasoned decision as to this ground.

The Supreme Court has left open the question of whether admission of evidence that is not relevant violates due process. *Estelle*, 502 U.S. at 70. Accordingly, as discussed above, the state court's decision cannot be contrary to clearly established federal law. *Carey*, 549 U.S. at 77; *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ").

The state court found that evidence of the Mossberg shotgun was relevant to show consciousness of guilt. "Other evidence established that the murder weapon was a handgun defendant had in his possession when he racked the gun in his grandmother's bathroom; the markings on a live round of ammunition found on her bathroom floor immediately thereafter matched the markings on the bullet that killed Withers." (LD 3 at 10.) When his residence was searched, the Mossberg shotgun that witnesses testified he owned was found but the murder weapon was not found. "The reasonable inference is that defendant disposed of the handgun after killing Withers because he knew it could be connected to the murder. That inference was made stronger by comparison with the fact that he did not dispose of the shotgun. In other words, he specifically chose to discard the murder weapon, but kept a gun with no connection to the murder." (*Id.* at 10-11.) The state court concluded the evidence was not more prejudicial than probative, and any error was harmless given the strength of the evidence of guilt. (*Id.* at 11.)

Issues of state evidence law are not a basis for federal habeas relief. *Id.* at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Petitioner may not "transform a state-law issue into a federal

one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law and was not an unreasonable determination of the facts. Ground Two does not warrant habeas relief.

## IV.
## **ORDER**

For the reasons set forth above, IT IS ORDERED (1) that Petitioner's request to dismiss Grounds Three and Four is GRANTED because the California Court of Appeal has granted the relief Petitioner sought; and (2) that judgment be entered denying Grounds One and Two of the Petition on the merits with prejudice.

DATED: December 1, 2017

_____
ALICIA G. ROSENBERG
United States Magistrate Judge